SO ORDERED: January 25, 2018.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VALENTINE HILL FARM LLC | ) | CASE NO. 17-5804-RLM-12 |
| | ) | |
| Debtor | ) | |
| | ) | |

**ORDER GRANTING DEBTOR'S MOTION TO DISMISS, WITH PREJUDICE**

This matter came before the Court for hearing on the chapter 12 trustee's motion to dismiss with a 180-day bar to refiling and the debtor's motion to dismiss. For the reasons stated below, the court grants the debtor's motion, but does so with prejudice, and imposes a 180-day bar to refiling.

The three events most pertinent to this case occurred on August 2, 2017: (1) the debtor, an Indiana LLC, was organized and filed its articles of organization with the Indiana Secretary of State's office at 10:52 a.m., (2) William Swanson and Maria Smietana ("Transferors") quit-claimed property located at 7549 S. Retriever Lane, Zionsville, Indiana (the "Property") to the newly-formed debtor, and (3) the debtor

1

filed this chapter 12 case at 4:59 p.m.  The debtor recorded the deed to the Property on August 3rd, the same day it was scheduled to be sold at sheriff's sale.  The debtor filed only the petition and the verification of the creditor's matrix.  The creditor matrix referenced only entities related to the foreclosure of the mortgage on debtor's property.  Debtor was given two weeks to file the rest of the necessary schedules and statements.  The chapter 12 trustee moved to dismiss the case two weeks after it had been filed and asked that the dismissal include a 180-day bar to refiling.

The case was dismissed on September 11th for the debtor's failure to file the necessary schedules and statements by the time allotted.  The dismissal was without a bar to refiling, and was entered before the trustee's motion could be heard.  The case was reinstated on the debtor's motion and the court rescheduled the hearing on the trustee's motion for December 3rd.  Two days before that hearing, the debtor filed its own motion to dismiss.  The debtor maintains that it has an absolute and unconditional right to dismiss its case and that its motion takes precedence over the trustee's motion to dismiss with a bar. At the conclusion of the December 3rd hearing, the court asked the parties to file post hearing briefs, which they have done.

## Discussion

Chapter 12 and 13 debtors may move to dismiss their cases "at any time", and upon such a request, the court "shall" dismiss the case, provided that the case has not previously been converted from another chapter.  11 U.S.C. §§1208(b); 1307(b).  Creditors of chapter 12 and 13 debtors, too, may move to dismiss the case "for cause" under sections §1208(c) and §1307(c).  A debtor's "bad faith" in filing the petition or the plan has been held to be a "cause" sufficient for dismissal under §1307(c), even though "bad faith" or "lack of good faith" is not expressly enumerated in that section.  *In re Smith*, 286 F.3d 461, 465 (7th Cir. 2002); *In re Jongsma*, 402 B.R. 858, 871 (Bankr. N. D. Ind. 2009); *In re Ferrell*, 227 B.R. 706, 708 (Bankr. S. D. Ind. 1998).  Given the nearly identical wording in §1307(c) and §1208(c), "bad faith" also has been found as "cause" to dismiss a chapter 12 case.  *In re Burger*, 254 B.R. 692, 696 (Bankr. S. D. Ohio 2000).

2

A chapter 13 case may also be *converted* to another chapter for cause under §1307(c) but the chapter 12 "for cause" provisions of §1208(c) are limited to dismissal. A chapter 12 case can be involuntarily converted to another chapter only upon a showing that the debtor committed fraud "in connection with the case" under §1208(d). Section 1208(d) also allows for dismissal of the case.

The trustee's motion asserts that the Transferors filed their own chapter 12 case in 2012 and that case was dismissed without a plan having been confirmed. The trustee also states that the debtor LLC could not have incurred farm related debt since it was formed within hours of the filing of the petition. The trustee concludes that the case was filed "only to delay and hinder collection of debts". Motion, ¶8, ECF #13. The motion does not specify under what section the trustee proceeds, but it reads as if the trustee seeks dismissal "for cause" under §1208(c) due to the debtor's bad faith in filing the case and that such bad faith warrants a bar to refiling. The motion does not contain the word "fraud".

The trustee however refers to fraud and §1208(d) in his post hearing brief and further adds that the debtor is not eligible to be a chapter 12 debtor because it does not meet the "80% farm asset" threshold of §101(18). [1] Whether the trustee proceeds under §1208(c), or (d), however, makes no difference because the pertinent factor here is whether a trustee's competing motion under §1208(c) or §1208(d) affects the debtor's "right" to dismiss under §1208(b).

The trustee's position is that there is a "bad faith" exception under §1208(c) and a "fraud" exception under §1208(d) [2] to a chapter 12 debtor's right to dismiss

---

[1] Section 101(18) provides, in part, that a "family farmer" is a corporation in which more than 50 percent of the outstanding stock or equity is held by one family and more than 80% of the value of its assets consists of assets "related to the farming operation". 11 U.S.C.. §101(18)(B)(i).

[2] "Fraud in connection with the case" under Section 1208(d) is more than "bad faith". At a minimum, it involves a debtor's intentional provision of misleading information or intentional failure to disclose material information on his schedules. See, *In re Caldwell*, 101 B.R. 728, 740 (Bankr. D. Utah 1989) (case converted to chapter 7 on creditor's motion where debtor failed to list half of his assets); *In re Bange,* No. 08-40156-12, 2010 WL 141840 at* 4 (Bankr. D. Kan. April 5, 2010) (applying the fraud standards of §523(a)(2)(A) to §1208(d) and converting the case to chapter 7 on the trustee's motion where the debtor used counterfeit money orders to pay the trustee); *In re Clark*, No. 1:13-cv-00305-EJL, 2014 WL 835824 at *4 (D. Idaho March 4, 2014) (affirming grant of creditor's motion to convert to chapter 7 where debtor failed to disclose material facts related to hay contract). Courts are

3

under 1208(b). Courts have found a bad faith exception under §1307(c) to a chapter 13 debtor's absolute right to dismiss under §1307(b). See, *In re Jacobsen*, 609 F.3d 647, 660 (5th Cir. 2010) (trustee's motion to convert chapter 13 case to chapter 7 under §1307(c) for bad faith granted over debtor's motion to dismiss under §1307(b)); *In re Rosson*, 545 F.3d 764, 774-775 (9th Cir. 2008); *In re Molitor*, 76 F.3d 218, 220 (8th Cir. 1996); *In re Mitrano*, 472 B.R. 706, 710 (E.D. Va. 2012) ("the right to dismiss upon request under §1307(b) is limited to good faith debtors"). The logic behind creating such an exception is that a debtor has an implicit duty to act in good faith and he should not be able to use the voluntary dismissal provision of §1307(b) as an "escape hatch" from the charges of bad faith because doing so "would render section 1307(c) a dead letter and open up the bankruptcy court to a myriad of potential abuses". *Molitor*, 76 F.3d at 220.

Courts adhering to this view cited the Supreme Court's *Marrama* decision as further support for their position. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). In *Marrama*, the Supreme court considered whether a chapter 7 debtor who made misleading and inaccurate statements in his schedules about his principal asset had an absolute right under §706(a) to convert his case to one under chapter 13 in response to the chapter 7 trustee's attempt to recover the asset. The Supreme Court held that the debtor had forfeited his right to proceed under chapter 13. The court determined that Section 706(a) which provides that a debtor "may" convert his case "at any time" as long as it had not been converted previously had to be read in conjunction with 706(d) which allows conversion to another chapter as long as "the debtor may be a debtor under such chapter". The Supreme Court reasoned that a debtor's "bad faith" could be a "cause" to dismiss his case under §1307(c) and that a dismissal or conversion of a chapter 13 debtor's case under §1307(c) was tantamount to a finding that the debtor could not qualify as a chapter 13 debtor. Thus, the debtor's bad faith in preparing his schedules caused a

---

divided on the appropriate standard of proof needed to prove "fraud in connection with the case" under §1208(d); cf. *Caldwell*, 101 B.R at 735 (clear and convincing evidence); *In re Nichols*, 447 B.R. 97, 108 (Bankr. N.D.N.Y. 2010) (same); and *Clark*, 2014 WL 835824 at *2 (noting that the lower court applied "the correct preponderance of the evidence standard").

4

forfeiture of his right to qualify as a chapter 13 debtor, and therefore also caused a forfeiture of the right to convert his case. *Id*. at 374. The court further noted that only "honest but unfortunate" debtors had an absolute right to convert their cases from chapter 7 to chapter 13. Courts have extended this "honest but unfortunate debtor" prerequisite to chapter 13 debtors and have created a bad faith exception under §1307(c) to a chapter 13 debtor's absolute right to dismiss under §1307(b).

*Marrama* did not resolve the split of authority regarding a chapter 13 debtor's absolute right to dismiss under §1307(b). Some courts hold that *Marrama* simply is inapplicable because it dealt with a chapter 7 debtor's right to dismiss under §706, not a chapter 13 debtor's right to dismiss under §1307(b). *Ross v. Americhoice Federal Credit Union*, 530 B.R. 277 (E. D. Pa. 2015) vacated on other grounds, 858 F.3d 779 (3rd Cir. 2017). ("*Marrama* did not interpret the language of §1307(b)…[i]t interpreted §706(a) which has more permissive language than does §1307(b)"). Furthermore, courts point out that there is no §1307(b) counterpart in §706 in that nothing in §706 provides that a court "shall" dismiss a case upon the request of a debtor; §706(a) merely says that a debtor "may" convert the case at any time if it has not been previously converted. Courts also looked to the plain meaning of Sections 1307(b) and 1307(c). The specific, mandatory "shall" language in §1307(b) is devoid of any mention of a bad faith exception and prevails over the more general, permissive "may" language in §1307(c). Thus, the only limitation on a debtor's right to dismiss is that which is expressly stated in the statute, i.e. that the case has not previously been converted. See, *In re Williams*, 435 B.R. 552, 559 (Bankr. N.D. Ill. 2010).

Courts are similarly divided in the chapter 12 context for the same reasons. Compare, *In re Davenport*, 175 B.R. 355 (Bankr. E. D. Cal. 1994 ) (chapter 12 debtor has unqualified right of dismissal under §1208(b), even when a trustee moves to convert the case under the "fraud" provision of §1208(d)); *In re Parker,* 560 B.R. 732, 741 (Bankr. E. D. Tenn. 2016) (chapter 12 debtor has unqualified right of dismissal, even where there are competing §1208(c) and §1208(d) motions) with *In re Graven*, 936 F.2d 378, 387 (8th Cir. 1991)(once fraud under §1208(d) becomes an

5

issue, court may delay action on debtor's §1208(b) motion in order to investigate fraud, and perhaps, convert the case, despite the debtor's motion to dismiss); *In re Williamson*, 414 B.R. 886, 891 (Bankr. S. D. Ga. 2008) (same); *In re Clark*, 652 Fed. Appx. 543, 544 (9th Cir. 2016) (court affirmed grant of creditor's motion to convert under §1208(d) over debtor's motion to dismiss under §1208(b)).

The competing motions here ask for the same disposition of the case - dismissal - with the trustee's motion requesting the added condition of a refiling bar. The court need not decide on which side of the "debtor 's absolute right to dismiss" debate it falls because the court can grant the debtor's motion and impose conditions on the dismissal on its own under §349. See, *In re Ross*, 858 F.3d 779, 784 (3rd Cir. 2017) (in the context of a chapter 13 case, the court stated that "we need not weigh in on this split in authority today, because even if [the debtor] were correct, and §1307(b) required the court to grant [the debtor's] request for dismissal before considering [the creditor's] motion, the Bankruptcy Court could have just as easily attached its filing injunction to [the debtor's] requested dismissal order").

Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

The debtor in its post-trial brief argues that the only conditions under which a case can be dismissed with prejudice with regard to refiling are those set out in §109(g). Section 109(g) sets out two instances in which the court can impose a 180-day bar to refiling upon dismissal of a case. Those conditions are where (1) the dismissal was due to the debtor's willful failure to abide by the court's orders or to appear before the court in proper prosecution of the case and (2) the debtor asks for and obtains voluntary dismissal of his case in response to a creditor's relief from stay motion. The debtor argues that neither of these conditions is present and thus dismissal of its case cannot be with prejudice.

6

At least one court has interpreted §349(a) in this fashion and has limited a "with prejudice" dismissal to the conditions stated in §109(g). See, *In re Frieouf*, 938 F.2d 1099, 1103 (10th Cir. 1991). This reading of §349(a) conveniently ignores the prefatory "unless the court, for cause, orders otherwise" language of the statute and has been soundly criticized by the majority of courts, including bankruptcy courts in this state. See, *In re B-3 Properties, LLC*, 517 B.R. 889, 897 (Bankr. N.D. Ind. 2014 ("...*Frieouf* has been widely criticized by nearly every other circuit addressing this issue, including two bankruptcy courts in this district, because it essentially reads out Section 349(a)'s statement of 'unless the court, for cause, orders otherwise'"); *In re Garcia*, 479 B.R. 488, 494 (Bankr. N.D. Ind. 2012 ("[t]he court first notes that it does not agree with the limitations imposed upon the use of 11 U.S.C. §349(a) determined in ...*Frieouf*"). The more accepted view is that §109(g) is "specifically aimed at preventing serial filers from bogging down the bankruptcy process" where §349(a) "is a more general provision that allows bankruptcy judges to bar refiling when there is otherwise good cause for doing it". *B-3 Properties*, 517 B.R at 897

  The purpose of a chapter 12 bankruptcy filing is to give family farmers a chance to reorganize their debts and keep their farms while preserving the fair treatment of creditors by moving Chapter 12 bankruptcy cases forward in an expeditious manner. *In re Pertuset*, 492 B.R. 232, 259 (Bkrtcy.S.D.Ohio,2012). The Court gives weight to the desire of family farmers to preserve their property and their way of life. In this case, the transferors who have operated this "farming" business have had multiple opportunities to propose plans in their prior bankruptcies while the mortgage company has waited many years for resolution or even a payment. Bars to refiling are warranted where related debtors file successive cases involving the same property to stall creditors and with no genuine intent to reorganize. See, *In re Brown*, Case No. 17-10021-KKS, 2017 WL 3493101 at *10 (Bankr. N. D. Fla. April 19, 2017) (imposing 180-day bar on son who was found to have filed his case as part of a scheme to hinder or delay foreclosure on property that was the subject of both his bankruptcy case and the several prior

7

bankruptcy cases filed by his mother).  The trustee's motion states that, "[t]he Tranferees (sic) have previously filed a chapter 12 in 2012 and no plan was confirmed and the case was dismissed".  (Motion, ¶6, ECF #13).  The December 3rd hearing on the motions was simply oral argument by debtor's counsel and the trustee; no witnesses testified and no evidence was admitted.

The court can take judicial notice of its own records, including the papers filed in this case and the related cases filed by the Transferors, William and Maria, the parties who owned the Property up to the morning of the day this case was filed.  *In re Maxfield*, No. 04-60355, 2009 WL 2105953 at *7, fn 1 (Bankr. N. D. Ind. February 19, 2009); *In re Earl*, 140 B.R. 728, 730, fn 2 (Bankr. N. D. Ind. 1992). [3]  A court can take judicial notice of the fact that a document was filed, but not the truth or veracity of that document's contents; however, verified schedules and statements filed by debtors are evidentiary admissions.  *Id.* at 730-731, fn 2.

The petition here was signed by William C. Swanson as manager of the debtor.  Mr. Swanson filed a chapter 12 case in 2012 [4] and scheduled the Property as being jointly owned by him and Maria Smietana.  The mortgagee who held the mortgage on the Property requested and obtained relief from stay and abandonment of the Property and relief from the co-debtor stay as to Maria.  The case was dismissed on the trustee's motion two months after that.  No plan had been confirmed.

William Swanson and Maria Smietana filed a chapter 12 case [5] about six weeks after Mr. Swanson's previous chapter 12 case had been dismissed.  Their schedules indicated that they jointly owned the Property.  The mortgagee again requested and obtained abandonment of the Property and relief from stay.  The case

---

[3] Fed. R. Bankr. P. 9017 provides that the Federal Rules of Evidence apply in bankruptcy cases. Fed. R. Evid 201 provides that a court, whether or not requested, may take judicial notice of adjudicative facts at any stage of the proceedings.

[4] Case No. 12-63-AJM-12, filed on January 5, 2012 and dismissed on 9-10-12

[5] Case No. 12-12946-RLM-12, filed on October 31, 2012 and dismissed on 9-25-13.

8

was dismissed on the trustee's motion without a plan having been confirmed. William and Maria did not object to the dismissal.

Little over a year later, William and Maria filed a chapter 11 case,[6] also scheduling the Property as jointly owned. The case was dismissed less than a month later for failure to file statements and schedules. The case was reinstated but the United States Trustee moved to convert or dismiss the case, to which William and Maria responded by filing their own motion to convert. The case was converted to chapter 7 on the debtors' motion. In their chapter 7 statement of intention, the debtors indicated that they intended to surrender the Property. As a result, the mortgagee again requested and obtained abandonment of the Property and relief from stay. William and Maria received their chapter 7 discharge about three months later.

Less than one month after entry of their chapter 7 discharge, William and Maria filed a chapter 13 case,[7] scheduling the Property as jointly owned. Because they had received a chapter 7 discharge in a case filed less than four years before the filing of the current case, they were ineligible to receive a chapter 13 discharge under §1328(f). The United States Trustee filed a motion to deny discharge which was granted on June 1, 2016. The case was dismissed on April 25, 2017, about ten months later, because they failed to file an amended plan as directed by the court. William and Maria conveyed the Property to the debtor here and the debtor filed this chapter 12 case less than four months later. The debtor lists the Property as its only real estate, consisting of 1.46 acres of farmland and 3.57 acres of improved land.

This matter is essentially a two party dispute between the debtor and the mortgage company. It is evident from the pattern of the previous filed cases that William and Maria's primary motive is to hinder or delay foreclosure of the Property and not to propose a confirmable plan under which the debt on the Property can be

---

[6] Case No. 14-10178-RLM-7, filed as a chapter 11 on November 6, 2014, converted to chapter 7 on November 18, 2015, and discharged entered 4-11-16.
[7] Case No. 16-3478-JJG-13, filed on May 6, 2016 and dismissed on 4-25-17.

9

restructured (due to their prior discharge, there is no personal liability on the mortgage note). This current case and all of the cases filed by William and Maria were filed by the same counsel. Three of the four previous cases were dismissed without a plan having even been confirmed. The Property was abandoned and the mortgagee obtained relief from stay in three of the four previous cases. The case that resulted in a chapter 7 discharge was the same case where they filed a statement of intention with the court to surrender the Property. William and Maria were not eligible to receive a discharge in the case filed in May, 2016, but had they chosen to keep the Property and file this chapter 12 as individuals, nothing in §1228 would have prevented them from receiving a chapter 12 discharge upon completion of payments under a confirmed plan. Thus, there appears to be no other reason for the creation of this debtor, the transfer of the Property and the filing of this chapter 12 case than to evade foreclosure. William and Maria have had no fewer than four previous attempts over the last six years to propose a confirmable plan and have not done so. It is questionable as to whether this debtor is even eligible for chapter 12 relief. The Court reaches the inescapable conclusion that this debtor, through William, its member, filed this case in bad faith, warranting this court to impose a 180-day bar on this debtor to refiling a case under any chapter.

Accordingly, the Trustee's motion is DENIED. The debtor's motion to dismiss is GRANTED, but the court finds that the case was filed in bad faith. The debtor here is barred from refiling a case under any chapter for 180 days from the date of dismissal.

# # #